# IN THE COURT OF APPEALS OF IOWA

No. 18-2016
Filed January 23, 2019

**IN THE INTEREST OF T.H.,**
**Minor Child,**

**T.H., Father,**
     Appellant.

_____

     Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block,

District Associate Judge.


     A father appeals the termination of his parental rights.  **AFFIRMED.**



     Mark A. Milder, Waverly, for appellant father.

     Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

     Michael Lanigan of Law Office of Michael Lanigan, Waterloo, guardian ad

litem for minor child.



     Considered by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

A father appeals the juvenile court's termination of his parental rights. He claims the State has failed to prove two of the grounds for termination and a guardianship would be in the child's best interest rather than termination of his parental rights. We affirm the juvenile court.

## I.  Background Facts & Proceedings

Ta.H., father, and A.S., mother, are the parents of T.H., born in 2017. At that time, the father was nineteen years old and the mother was fifteen years old. The child was born over two months early and tested positive for marijuana at birth. On August 1, 2017, the Iowa Department of Human Services (DHS) removed the child when both parents incurred criminal charges.[1] On August 30, the child was adjudicated in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o) (2017). After a brief foster-home placement, the child was placed with the father's aunt and grandmother.

The father completed a required substance-abuse evaluation in August but failed to complete recommended counseling and drug testing. The parents were allowed daily supervised interactions with the child. Initially, the parents did not consistently attend State-supervised visitation with the child and would visit the child approximately twice a week supervised by family members. In December, the father was arrested on additional charges. After his release in March 2018, the father attended visitation more consistently, but attendance decreased over

---

[1]  The child was in the neonatal intensive care unit at the time of the parents' arrest.

time. The father did not comply with substance-abuse or mental-health programming recommendations.

In February 2018, the court granted a six-month extension to the parents to achieve reunification, and a three-month extension in May despite inconsistent cooperation by the parents. In July, the father was re-arrested, then began his term of incarceration for his 2017 offenses.

On September 4, 2018, the State filed a petition to terminate both parents' rights. The court held a hearing on November 5 and the father testified via telephone. The father requested a guardianship for the child with the paternal aunt, stating he wanted another chance to prove he could be a good father to the child. DHS, the aunt, and the guardian ad litem all requested the father's rights be terminated and the aunt would adopt the child. All parties testified the aunt would allow the father to be in the child's life if he was doing well after his release from prison.

Ruling from the bench at the hearing, the court noted the father has never been the primary caregiver and a guardianship would not be fair to the child or the family members who have been raising the child. The court's order terminated the father's parental rights pursuant to section 232.116(1)(e), (h), and (*l*) (2018).[2] The father appeals.

## II. Standard of Review

We review termination-of-parental-rights cases de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "There must be clear and convincing evidence of

---

[2] The mother's parental rights were terminated pursuant to the same provisions. She does not appeal.

the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Where there is clear and convincing evidence, there is "no serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (citation omitted). The paramount concern in termination proceedings is the best interest of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011).

### III.    Analysis

The father concedes sufficient evidence supports the termination of his parental rights under section 232.116(1)(h), though he contests termination under paragraphs (e) and (*l*). We need only find grounds to terminate under one section to affirm. *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015). The father argues because the other two sections do not apply, the court should create a guardianship placing the child with the father's aunt until he is able to care for the child on his own.

In some circumstances, guardianships can be in a child's best interest. *See, e.g.*, *In re B.T.*, 894 N.W.2d 29, 34 (Iowa Ct. App. 2017). However, a guardianship is not a preferred method to establish permanency for a young child. *See In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018). The legislature has determined the time frame for a parent to show the ability to act as a parent—for a child as young as T.H., that time frame is six months. *See* Iowa Code § 232.116(1)(h)(3). Here, the parents had double that to make progress toward reunification and failed.

"In considering whether to terminate, 'the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (quoting Iowa Code § 232.116(2)).  In this case, the child has never been in the father's care but always in the care of the father's aunt.  The father is not scheduled to be released from prison for several years.

Additionally, the paternal aunt testified she did not want a guardianship established because the parents had not demonstrated a willingness to work and put the child first.  In particular, she expressed concern that the father had not done what he was supposed to during the year between removal and termination, including regularly visiting the child.  The child has thrived in the aunt's care.  The aunt is willing and able to provide a safe, stable, loving home and wants to adopt the child.  The aunt has tried to facilitate the relationship between the father and the child, and will allow the father in the child's life if he is doing well.

Accordingly, we find clear and convincing evidence termination of the father's parental rights is in the child's best interest.

**AFFIRMED.**